# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROGER GREENFIELD and THEODORE KASEMIR, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) )  Case No. 14 C 1583 ) |
| GUS PALOIAN and SEYFARTH SHAW LLP, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Roger Greenfield and Theodore Kasemir were the principals of Restaurant Development Group (RDG), which filed for bankruptcy. They later settled bankruptcy-related litigation with the court-appointed bankruptcy trustee, Gus Paloian, who is also a lawyer with the firm Seyfarth Shaw. The settlement was embodied in a consent decree entered by the bankruptcy court. Among other things, it prohibited Paloian and his counsel (the Seyfarth firm) from disclosing information or documents obtained in the litigation, except as required by law.

Paloian later gave an interview with an online legal news publication in which he said that he had participated in exposing a "well-orchestrated, multistep, multilayered scheme to defraud" RDG's creditors. When Greenfield and Kasemir learned of Paloian's statements, they sued Paloian and Seyfarth Shaw in state court for breach of the consent decree and for defamation. Paloian and Seyfarth Shaw removed the case

to federal court because it included a claim for breach of a consent decree entered by a federal bankruptcy court.

Paloian and Seyfarth Shaw have now moved to dismiss the complaint on various grounds. For the reasons stated below, the Court dismisses the consent decree claim for lack of jurisdiction but declines to dismiss the defamation claim.

## Background

RDG, which Greenfield and Kasemir owned, filed for bankruptcy in this district in 2009. Paloian was appointed as chapter 7 trustee. A good deal of litigation ensued that was related to the bankruptcy.

In March 2009, Greenfield and Kasemir settled their disputes with Paloian. The settlement was embodied in a lengthy and detailed consent decree. The decree recited that Paloian had entered into it "not individually or personally, but solely in his capacity as the duly-appointed Chapter 7 trustee" of the bankruptcy estate of RDG. Compl., Ex. A at 1-2. The consent decree also contained a paragraph entitled "Trustee Exculpation," which provided as follows:

> The Agreement is executed on behalf of the Estate by Gus A. Paloian, not personally or individually, but solely in his capacity as the Chapter 7 Trustee of the Estate, in the exercise of the power and authority conferred upon and vested in his as the Chapter 7 Trustee of the Estate, and all Parties to the Consent Decree for themselves, and on behalf of their successors and assigns, and any other person or entity claiming any rights through them in the Consent Decree, agree that no personal liability or responsibility is assumed by, shall attach to, or shall at any time be asserted or enforced against Gus A. Paloian personally or individually, and/or against his attorneys, with all such personal liability, if any, being expressly waived and released by the Parties.

*Id.* ¶ 16.

Paragraph 12 of the consent decree, entitled "Confidentiality," included a

2

sentence that stated: "Neither the Trustee nor his counsel shall issue any press release related to the Consent Decree, the Adversary Proceeding or the Frozen Funds Proceeding." *Id.* ¶ 12. Paragraph 12 also stated that, with exceptions not pertinent here, "the Trustee and his counsel shall not disclose any information or documents obtained from the G&K Defendants in discovery in the Adversary Proceeding, the Frozen Funds Proceedings or in response to any subpoenas to any third party that relate solely to the G&K Defendants . . . ." *Id.*

The bankruptcy court entered the consent decree in late March 2009 and dismissed the litigation that the decree settled. In May 2009, the online publication Law360 interviewed Paloian. Most of the interview focused on topics regarding Paloian's work as a bankruptcy partner at Seyfarth Shaw, his personal experiences, and his views on bankruptcy law and on the legal profession. The interviewer also asked Paloian what his most challenging case had been. He answered that it was the RDG bankruptcy, "because of the factual complexity and the investigative effort that was required to expose a well-orchestrated, multistep, multilayered scheme to defraud the creditors of Restaurant Development Group." Defs.' Mem. in Support of Mot. to Dismiss, Ex. A at 1. Paloian went on to describe what he characterized as "a well-planned scheme" by "[t]he ownership, management and others" to transfer RDG's assets so that they were "beyond the reach of creditors," in order "to avoid paying the company's legitimate obligations." *Id.*

Greenfield and Kasemir allege that Paloian's statement breached the consent decree's confidentiality provision and that it was deliberately false. They contend that in June 2013, a potential business partner refrained from engaging in a business venture

3

with them, citing Paloian's statements in the Law360 interview. That, plaintiffs allege, is when they first learned of Paloian's statements. They filed this suit on February 3, 2014. They assert claims for breach of contract (the consent decree) and defamation.

Paloian and Seyfarth Shaw have moved to dismiss. They argue that the breach of contract claim is deficient because neither Paloian in his individual capacity nor Seyfarth Shaw was a party to the consent decree; plaintiffs released Paloian from personal liability; and no claim may be brought against him in his capacity as bankruptcy trustee without the bankruptcy court's approval. Defendants also argue that the defamation claim is time-barred.

## Discussion

**1.  Claim for breach of consent decree**

It is not altogether clear whether Paloian was speaking in his capacity as bankruptcy trustee when he made the statements at issue to Law360. On the one hand, whatever he knew about the RDG case, he had learned from being the trustee. Thus a fair argument can be made that in conveying that knowledge to others, he was acting as trustee. On the other hand, the interview had nothing to do with Paloian's work in administering the RDG bankruptcy, and in fact the interviewer did not focus on that case at all. Rather, the interview involved Paloian's bankruptcy practice generally; Paloian chose to discuss the RDG bankruptcy in responding to a question that did not reference that case. For these reasons, a fair argument can be made that he was speaking as an individual, or perhaps both as an individual and as the bankruptcy trustee.

The more important question for purposes of the breach of contract claim,

4

however, is the capacity in which the consent decree binds Paloian.  The Court agrees with Paloian that the decree binds him only in his capacity as bankruptcy trustee, not in his individual capacity.  The decree could hardly be clearer in this regard.  As quoted earlier, its first sentence states that Paloian is entering into it "not individually or personally, but solely in his capacity as the duly-appointed Chapter 7 trustee of the Estate . . . ."  Compl. Ex. A at 1-2.  Likewise, Paloian signed the decree as "Gus A. Paloian, not individually or personally, but solely in his capacity as the Chapter 7 Trustee of the Estate of the Debtor."  *Id.* at 21.  The confidentiality provision similarly binds the "Trustee," a term that is capitalized in that provision to indicate a reference back to the definition just quoted, found at pages 1-2 of the decree.  *Id.* ¶ 12.

Greenfield and Kasemir contend that the consent decree's confidentiality provision is effectively undermined "if Paloian can gain knowledge through his trustee position and then disclose that information as a bankruptcy attorney for Seyfarth in violation of the Consent Decree."  Pls.' Resp. Mem. at 4.  The Court will put it more bluntly:  if Paloian is correct about the meaning of the consent decree, it permitted him to use to his personal advantage and to the detriment of RDG's principals information he had obtained only because he was RDG's bankruptcy trustee.  This would mean that the confidentiality term has extremely limited utility.  But the consent decree and the confidentiality term are unambiguous; they bind Paloian only in his capacity as trustee of the RDG bankruptcy estate, and not as an individual.  In retrospect, this aspect of the deal may have been miserably bad for Greenfield and Kasemir, but it is the deal they made.  Their claim for breach of the decree lies only against Paloian in his capacity as

bankruptcy trustee.[1]

This by itself does not require dismissal of the breach of contract claim against Paloian, because Greenfield and Kasemir still can seek to impose liability on him in his capacity as trustee. Paloian argues, however, that the law does not permit a party to file suit against a bankruptcy trustee without first obtaining leave from the bankruptcy court, a step Greenfield and Kasemir did not take before filing this suit. The Court addresses that contention next.

Under the so-called *Barton* doctrine, a party must seek leave of the bankruptcy court to file suit against a bankruptcy trustee. The doctrine, as first set forth by the Supreme Court in *Barton v. Barbour*, 104 U.S. 126 (1881), requires a party to obtain permission of the appointing court before bringing a suit against a receiver. The Seventh Circuit applied this to bankruptcy trustees in *In re Linton*, 136 F.3d 544 (7th Cir. 1998), describing the rule as follows: "someone wanting to sue a trustee in bankruptcy concerning actions taken by him in the course of his trusteeship must obtain the permission of the bankruptcy court." *Id.* at 545.

The rationale for the *Barton* rule is that if a trustee "is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded." *Id.* This rationale applies even if, as in this case, the suit against the trustee is filed after the bankruptcy is concluded (that was the case in *Linton* too). As the court stated in *Linton*, "[i]f debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the

---

[1] For this reason, the Court need not address Paloian's alternative argument that an individual-capacity claim against him for breach of the consent decree is precluded by the decree's exculpatory clause.

6

trustee in state court for damages arising out of the conduct of the proceeding, that court would have the practical power to turn bankruptcy losers into bankruptcy winners, and vice versa." *Id.* at 546.

Paloian's interview with Law360, though given while the RDG bankruptcy was still pending, does not appear to have had anything to do with administering the estate. One might therefore argue that the *Barton* doctrine does not apply, on the ground that Paloian was not acting, in the words of *Linton*, "in the course of his trusteeship." Although this argument has some appeal, it remains the case that the obligation Paloian allegedly breached is one that he owed only in his capacity as bankruptcy trustee. The Court concludes that because a suit for breach of the consent decree can only be made against Paloian in his capacity as trustee, under *Barton* and *Linton*, prior approval by the bankruptcy court is required.

Greenfield and Kasemir ask the Court, if it reaches this conclusion, to permit them to amend their complaint to name Paloian in his capacity as RDG's bankruptcy trustee. As Paloian argues, however, plaintiffs first "must obtain the permission of the bankruptcy court." *Linton*, 136 F.3d at 545. Thus Greenfield and Kasemir must return to the bankruptcy court if they want to obtain leave to sue Paloian as the trustee.

Unfortunately for Greenfield and Kasemir, the application of the *Barton* doctrine is likely to amount to the death knell for their claim for breach of the consent decree. A claim against Paloian as trustee amounts to a claim against the bankruptcy estate, not Paloian personally. *See In re marchFIRST, Inc.*, 448 B.R. 499, 512 (Bankr. N.D. Ill. 2011). But the RDG bankruptcy case has been closed for over two years, and thus there is no estate from which Greenfield and Kasemir can obtain a recovery. So

7

obtaining leave to sue Paloian may well be an exercise in futility.

**2.    Defamation claim**

Defendants' only argument for dismissal of plaintiffs' defamation claim—which, because it is not based on the consent decree, can be brought against Paloian as an individual[2]—is that the claim is time-barred. A one-year limitations period applies to defamation claims in Illinois, *see* 735 ILCS 5/13-201, and defendants argue that the clock began to run on the date of publication, which was in late May 2009. Because Greenfield and Kasemir did not file suit until February 2014, defendants argue, the claim is time-barred.

Paloian and Seyfarth Shaw are correct that the limitations period on a defamation claim typically starts to run on the date the allegedly defamatory material was published. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 435 (7th Cir. 2009) (applying Illinois law). However, "[u]nder certain circumstances, namely when a publication was hidden, inherently undiscoverable, or inherently unknowable, Illinois courts apply the discovery rule such that the statute of limitations does not accrue until the plaintiff knew or should have known of the defamatory report." *Id.* (internal quotation marks omitted).

Paloian and Seyfarth Shaw are not entitled to dismissal under Rule 12(b)(6) on this basis. The statute of limitations is an affirmative defense, and "a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Indep. Trust. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). It is only "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense [that] dismissal under Rule 12(b)(6) is appropriate." *Id.* That

---

[2] Defendants do not argue otherwise.

8

standard is not met here. Greenfield and Kasemir specifically allege that they did not discover Paloian's interview to Law360 until June 2013, see Compl. ¶ 23, and nothing in the complaint establishes the inapplicability of the discovery rule.

### 3. Dismissal vs. retention of case

The Court has dismissed the claim that provided the basis for federal jurisdiction. Ordinarily this would require remand to state court. The Court will not yet remand the case, however, for two reasons. First, Greenfield and Paloian may choose to go to the bankruptcy court to seek leave to sue Paloian for breach of the consent decree, and if they end up obtaining such leave, the case appropriately would stay in federal court. It makes no sense to send the case back to state court before the bankruptcy court approval process, should plaintiffs choose to undertake it, is completed. Second, the Court believes that an appropriate basis exists to certify the dismissal of the consent decree claim for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), unless plaintiffs prefer not to pursue that option. The Court will set the case for a status hearing in order to permit plaintiffs and their counsel to confer and determine how they wish to proceed.

### Conclusion

For the reasons stated above, the Court dismisses plaintiffs' breach of contract claim without prejudice for lack of subject matter jurisdiction but declines to dismiss their defamation claim. The case is set for a status hearing on September 9, 2014 at 9:30 a.m.

                                              MATTHEW F. KENNELLY
                                              United States District Judge

Date: August 25, 2014